NOT FOR PUBLICATION                          (Docket No. 14)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

```
_____
                              :
GETTY PETROLEUM MARKETING,    :
INC.,                         :
                              :
            Plaintiff,        :    Civil No. 05-4732 (RBK)
       v.                     :    **OPINION**
                              :
BALKAR SAINI, et al.,         :
                              :
            Defendants.       :
_____:
```

**KUGLER**, United States District Judge:

This matter comes before the Court on motion by Plaintiff Getty Petroleum Marketing, Inc. ("Plaintiff"), for a default judgment of its claims against Defendants Jassi Fuels LLC ("JF"), Jessi Fuels Stop LLC ("JFS"), Balkar Saini, and Bhupinder Saini (collectively, "Defendants"),[1] for failure to appear or otherwise respond to Plaintiff's Complaint of September 30, 2005. For the reasons set forth below, Plaintiff's motion will be denied.

## I.   Background[2]

Plaintiff is the franchisor of retail gasoline service

---

[1] R.A. Reiff, Inc. ("Reiff"), is no longer a party to this suit, pursuant to a settlement agreement, filed November 28, 2005.

[2] Because Defendants have not appeared in this action, the following facts are taken from the Plaintiff's Complaint. See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

stations in New Jersey and the licensor of the LUKOIL trademark. Defendants JF and JFS entered into ten year franchise and ancillary agreements to operate two franchise sites in Collingswood and Moorestown, New Jersey, respectively, and were operating these franchises at the time of the events underlying the Complaint. Defendant Balkar Saini is a constituent member of JF and JFS and Bhupinder Saini is a constituent member of JFS. Both executed written Personal Guaranties of any sums due to Plaintiff on behalf of JF and JFS.

Plaintiff alleges that Defendants obtained non-LUKOIL brand motor fuel, placed the fuel in the underground storage tanks at their franchise locations, and sold the gasoline to the public under the LUKOIL trademark, trade name, and trade dress displayed at the franchises. Defendants obtained some or all of this non-LUKOIL fuel from Defendant Reiff who provided the non-LUKOIL fuel to JF and JFS on several occasions, including a delivery on September 19, 2005.

Plaintiff terminated the franchise contracts and supply and ancillary agreements in September 2005, and filed the above-captioned Complaint on September 30, 2005, alleging trademark violations, unfair competition, breach of contract, and tortious interference. Defendants were served and summonses were filed on October, 13, 2005, and October 25, 2005. Plaintiff requested entry of default against all Defendants on November 8, 2005, and

the clerk entered default on November 9, 2005.

Plaintiff moved to enter a stipulated consent injunction against Defendant Reiff on November 28, 2005, and filed the present motion for default judgment against remaining Defendants JF, JFS, Bhupinder Saini, and Balkar Saini on January 11, 2006. Plaintiff's motion requests a total judgment of $1,782,408 in the form of a judgment against JF in the amount of $887,951 and a judgment against JFS in the amount of $894,457. Plaintiff also requests entry of judgment against guarantors Balkar and Bhupinder Saini, individually and jointly for the total sum of $1,782,408. All alleged damages are those arising from the breach of contract claim. Plaintiff does not request any damages associated with its trademark, unfair competition, or tortious interference claims.

As of the date of this Opinion and accompanying Order, Defendants have not appeared in the action or otherwise responded to the above-captioned Complaint.

## II. Default Judgment Standard

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a defendant fails to appear . . . , the district court or its clerk is authorized to enter a default judgment

based solely on the fact that the default has occurred."). The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such "discretion is not without limits, however, and we have repeatedly stated our preference that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1180, 1181 (3d Cir. 1984) (citations omitted).

Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages. Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Directv, Inc. v. Asher, Slip Copy, 2006 WL 680533 (D.N.J. 2006) (citing Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure § 2688, at 58-59, 63 (3d ed. 1998)). Consequently, before granting a default judgment, the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Asher, 2006 WL 680533 (citing Wright, Miller, & Kane, § 2688, at 63); Directv, Inc. v. Croce, 332 F. Supp 2d 715, 717 (D.N.J. 2004)). The Court must also "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." In re Industrial Diamonds, 119 F. Supp. 2d at 420 (citing Credit Lyonnais Securities (USA), Inc. v.

4

<u>Alcantara</u>, 183 F.3d 151, 155 (2d Cir. 1999)).

## III. Analysis

### A. <u>Emasco</u> Factors

Before granting a default judgment, the Court is obliged to consider three factors: (1) whether plaintiff will be prejudiced if default is not granted, (2) whether defendant has a meritorious defense, and (3) whether defendant's delay was the result of culpable misconduct. <u>Asher</u>, 2006 WL 680533; <u>Carpenters Health and Welfare Fund v. Naglak Design</u>, 1995 WL 20848 *2 (E.D. Pa. 1995) (citing <u>Emasco Ins. Co. v. Sambrick</u>, 834 F.2d 71, 73 (3d Cir. 1987); <u>Hritz</u>, 732 F.2d 1178, 1180). However, these factors are more applicable to situations where the defaulting party has made an appearance, particularly where the party wishes to reopen a previously entered default.

In any event, since Defendants have not made an appearance, this Court is "not in a position then to determine whether [Defendants have] a meritorious defense or whether any delay is the result of culpable misconduct." <u>Carpenters Health</u>, 1995 WL 20848 *2 (E.D. Pa. 1995). In the same vein, because Plaintiff has "no other means of vindicating its claim against" Defendants, Plaintiff will be prejudiced if the default is not granted. <u>Asher</u>, 2006 WL 680533 *2 (granting default judgment where defendant "has not responded in any fashion," "has not asserted any meritorious defense," and has not "offered any excusable

reason for his default"). Accordingly, the factors recommend entry of the default judgment.

**B.    Cause of Action**

Default judgment is inappropriate, even where defendants have failed to appear, unless the plaintiff has provided well pleaded facts sufficient to establish a claim. Directv v. DeCroce, 332 F. Supp. 2d 715 (D.N.J. 2004), rev'd on other grounds, 431 F.3d 162 (3d Cir. 2005). Because a defaulting party does not admit conclusions of law, the Court must make an independent inquiry into "whether the unchallenged facts constitute a legitimate cause of action." Id. (denying default for failure to state a claim) (quoting Wright, Miller & Kane, § 2688, at 63).

In its motion for default judgment, Plaintiff ignores most of the claims in its Complaint and requests only those damages associated with the alleged breach of contract. Because "[c]onclusions drawn with respect to the legal effect of any agreement"—including whether a contract has been breached—constitute questions of law, this Court must make an independent determination as to whether Defendants breached the contract. See ATACS Corp. v. Trans World Comm., Inc., 155 F.3d 659, 665 (3d Cir. 1998) (citing Linder v. Inhalation Therapy Servs., Inc., 834 F.2d 306, 310 (3d Cir. 1987)); Petereit v. S.B. Thomas, Inc., 63 F.3d 1169, 1176 (2d Cir. 1995) (noting that "the

6

conclusion that the contract has been breached" constitutes a "legal conclusion[] to be drawn from factual findings").

Taking as true all well pleaded allegations, Defendant's sale of non-LUKOIL gasoline under the LUKOIL label may well have breached the franchise agreement. Misbranding constitutes "the cardinal franchise sin," Carvel Corp. v. Piacente, 162 A.D. 2d 168, 170 (N.Y. App. Div. 1990), and amounts to a clear trademark violation. Amoco Oil Co. v. D.Z. Enter. Inc., 607 F. Supp. 595, 600 (D.C.N.Y. 1985) (granting summary judgment to plaintiff Amoco because "selling through Amoco-branded pumps gasoline that Amoco had not sold to" defendant "violated the Lanham Act and state law").

In most instances, therefore, misbranding does breach a franchise agreement and is typically grounds for termination of the franchise. See e.g., Koylum, Inc. v. Peksen Realty Corp., 223 F. Supp. 2d 405 (E.D.N.Y. 2002) (holding that "'passing off' the non-Mobil gasoline as Mobil gasoline [] is a ground for termination of the franchise under the contract and under the [Petroleum Marketing Practices Act] cannot seriously be disputed"); Shell Oil Co. v. Avar Corp., 1998 WL 312119 (N.D. Ill. 1998) (holding because Defendants "willfully sold a mixture of Shell and non-Shell gasoline . . . Shell's termination of its franchise relationship with defendants was proper as a matter of law"); Itin Oil Co. v. Mobil Oil Corp., 527 F. Supp. 898 (D.C.

7

Mich. 1981) (denying misbranding franchisee's injunction to enjoin termination of franchise).

Nevertheless, not all franchise contracts provide for immediate termination where a franchisee has engaged in misbranding. See e.g., Lippo v. Mobil Oil Corp., 776 F.2d 706, 709 (7th Cir. 1985) (upholding permanent injunction of franchise termination because, although Defendant "violated his franchise agreement and the PMPA, his misbranding and commingling of non-Mobil gasoline was excused by the ten day cure provision of the Supplemental Agreement").

In this instance, Plaintiff has not provided the Court with adequate information to ascertain whether a breach has occurred. Plaintiff's sole allegations consist of the conclusive statements that "JF has breached its ten year franchise and ancillary agreements with GPMI" and "JFS has breached its ten year franchise and ancillary agreements with GPMI." (Pl. Compl. ¶¶ 24, 36.) Plaintiff has neither provided the contract to the Court, nor specified the contractual clauses giving rise to the breach. Accordingly, this Court is unable to determine whether the alleged breach has occurred. See Wisser Co., Inc. v. Mobil Oil Corp., 730 F.2d 54, 57 (2d Cir. 1984) (looking to the contract to ascertain whether franchisor has right to terminate for misbranding).

**C.    Damages**

For the same reasons, Plaintiff has failed to establish entitlement to the requested damages. It is well established that "[a] default is not an admission of the amount of damages claimed," and that the Court should not merely accept as true allegations related to damages. In re Industrial Diamonds Antitrust Litig, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000); Comdyne, 908 F.2d at 1149. Although courts are accorded considerable discretion in calculating damages, Jones v. Winnepesaukee Realty, 990 F.2d 1, 4 (1st Cir. 1993), courts "must ensure that there [is] a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). The court's inquiry "involves two tasks: determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages to be determined under this rule." Credit Lyonnais Securities, 183 F.3d at 152.

In this instance, Plaintiff has not provided evidence adequate to enable this Court to assess Plaintiff's entitlement to damages "with reasonable certainty." See id. at 154-55 (holding that "the allegations in the complaint and the affidavit of plaintiff's counsel . . . was insufficient evidence upon which to enter the amount of the judgment"). Plaintiff alleges damages against JF in the amount of:

(1)  $46,951 from payments owed to Plaintiff pursuant to the
     franchise and ancillary agreements with JF;

(2)  $34,000 for the cost of branding the JF franchise site as
     one of Plaintiff's franchise locations;

(3)  $710,000 for motor fuel Defendants were obligated to
     purchase under the franchise agreement; and

(4)  $97,000 as a result of an unpaid loan balance presently due
     and owing to Plaintiff pursuant to a Promissory Note entered
     on May 30, 2003.

Against Defendant JFS, Plaintiff claims entitlement to:

(1)  $8,457 in damages from payments owed to Plaintiff pursuant
     to the franchise and ancillary agreements;

(2)  $42,000 for the cost of branding the franchise site as one
     of Plaintiff's franchise location;

(3)  $710,000 in damages for motor fuel Defendants were obligated
     to purchase under the franchise agreement;

(4)  $134,000 as a result of an unpaid loan balance presently due
     and owing to Plaintiff pursuant to a Promissory Note entered
     on May 30, 2003.

     However, Plaintiff has proffered no explanation of the
calculations employed to arrive at these figures. The record is
devoid of any indication of how Plaintiff assessed the damages
flowing from Defendants' "failure to purchase contractually
required amounts of motor fuel," for example, or from "branding

10

expenses" and the "unpaid balance for products sold and delivered by GPMI." (Pl. Mot. ¶¶ 4-7). Rather, in support of its request, Plaintiff offers only a Certification by Dave Wallace ("Wallace"), Director of Region 105 of Getty Petroleum Marketing, Inc. In the Certification, Wallace attests:

> I have personal knowledge of the facts regarding the sums due from defaulting defendants, as set forth in paragraphs 3-7 of the attached Plaintiff's Verified Motion for Entry of Default Judgment Against Defendants Balkar Saini, Bhupinder Saini, Jassi Fuels LLC and Jessi Fuels Stop LLC. The facts set forth therein are true and correct.

(Wallace Cert., filed Jan. 11, 2006.)

This Certification alone cannot relieve the Court of its duty to make an independent inquiry into the amount of damages requested. Accordingly, as Plaintiff has failed to provide the Court with evidence adequate to establish that Defendants breached their contracts or that Plaintiff is indeed entitled to $1,782,408 in damages, Plaintiff's motion for default judgment will be denied.

The accompanying Order shall issue today.


Dated: May 15, 2006                    S/Robert B. Kugler
                                       ROBERT B. KUGLER
                                       United States District Judge